Let's proceed with the first case, which is 21-1087 Examination Board v. International Association. And for the appellants, Mr. Furton, you may proceed. Thank you, Your Honor. May it please the Court. My name is Matthew Furton. I am counsel for the International Association of Certified Home Inspectors, also known as ASHI. I will be speaking here today for 15 minutes, the last three of which my plan is to be speaking in a rebuttal capacity. InterNACHI should be given its day in court. This case was prematurely terminated by the District Court on the grounds that no reasonable jury could find that InterNACHI was injured by ASHI's false advertising. That decision was erroneous because there is evidence from which a reasonable jury could determine that InterNACHI was injured by the false advertising. So you're not just relying on a presumption of injury here? Correct. There's actually an affidavit from the founder of InterNACHI that says that InterNACHI was injured. Under the law, there's two concepts involving injury. There's the fact of injury and there's the quantity of injury. We did not set forth a quantum. We did not seek to quantify or declare the amount of damages. And a declaration as to the fact of injury is direct evidence. There is, though, also a presumption. As to the direct evidence, is that it? That's not it. There is additional evidence. There's also evidence that the defendant, in this case it's a counter-defendant because this was a counter-claim, ASHI, had a spike in its commercial success as a result of its false advertising. The spike came when it adopted its false slogan. It told the world that its entire membership was educated, tested, verified, and certified. But there was more at that time than just a tagline. That's also the time in which they started promoting associate members, right? Yes. Historically, that tagline may well have been accurate 10 years earlier or so, but they adopted this third lowest category called associate members. The associate members were newbies. When you renew as an associate member, year two, you'd have a continuing education requirement. But there is no continuing education requirement when you first come in, so there's no education requirement for these associate members. They didn't need to be trained in any way to be home inspectors, and they didn't need to have ever done a home inspection. They could have just aspired to be home inspectors. They were not tested. There was no test given. There was a plan to administer a module to them upon signing up, but ASHI's own investigation revealed that its own membership, its own associate memberships, wasn't in fact... So it purged 900 of its members. So was the draw for the associate members the promotion that ASHI would do for them? Yes, the advertising. It's essentially a search engine. You can go to Google and you can look for a home inspector. Google tends to send you to either the plaintiff or the defendant's websites, InterNACHI or ASHI, which then have search engines and you can find a home inspector. And the challenge here is that InterNACHI was trying to compete against a competitor who is offering the ability for unqualified, uneducated, untested, unverified, uncertified people, newbies, to be promoted as if they were educated, tested, verified, and certified. And InterNACHI couldn't offer that. Counsel, no, I understand that you have a competitor. I mean, that's part of the facts of this case. But where I'm struggling is how you satisfy the proximate cause requirement here for the injury showing. So I understand the question. The proximate cause issue came up in the Lexmark case. And they said the paradigmatic example of proximate cause in the context of false advertising is when you have two competitors, one engages in false advertising and the other is hurt by it. The proximate cause issue comes in when the landlord of the injured party or the electric provider for the injured party doesn't get paid because the injured party fails. Those companies don't have proximate cause. They're too remote. Here we are talking about direct competitors. There's a number of cases cited throughout the briefs of direct competitors where it's clear, obvious that the gain for one will be at the expense of the other. And it might not be a one-for-one ratio. It might not be every single hamburger sold by one chain causes a loss of a hamburger at the other chain. But when you are direct competitors, particularly in a duopoly where there's only two companies providing this service. So are you saying the duopoly context here supplies the evidence of but-for causation, that you don't need anything else but to show that you are operating in a duopoly? I think we do show more than that. But the duopoly itself is sufficient. The Merck v. Gnosis case in the Second Circuit from 2014, similar. You had two pharmaceutical companies offering competitive drugs. And the court felt that the existence of the competition between the two meant that necessarily the gain for one would be at the loss for the other. Your financial injury, is that the loss of dues from new members? Yes, the injury manifests itself in a lot of different ways, Your Honor. We were forced to compete with an organization that was offering a benefit we couldn't compete with because we were unwilling to engage in false advertising. So how does that actually manifest itself? Maybe you have to spend more time on marketing. Maybe you get fewer customers. We didn't quantify any of those areas because the statute doesn't require it. We were seeking disgorgement of the defendant's ill-gotten gains, and we had an expert report that outlined those ill-gotten gains. At some point you have to demonstrate your damages aren't speculative. As I understand it, the newbies, as you referred to them, they would not be eligible for membership in your organization, would they? No, they are eligible for membership in our organization. They're not eligible for promotion on our website. We only promote the most experienced and the certified members, the ones who have gone through more than 100, 150 or so inspections. They wouldn't be eligible to be held out as home inspectors because they wouldn't meet the minimum requirements of membership in your organization. No, they would meet the minimum requirements. We don't have minimum requirements in the sense that you can't – indeed, there's a government – They could not inspect a home, could they, under your auspices? They could inspect a home, absolutely. It's just they wouldn't get advertising from us. They could hold themselves out as being a member of InterNACHI, you know, to their local community or whatever, but InterNACHI's website wouldn't say, hey, you should hire this guy because he's one of our best. That's the only – and the district court seemed to misunderstand that. They thought we weren't interested in the money from these newbie members, but we are interested in the money. We wanted them to be members of our organization. We just weren't going to promote somebody who didn't deserve to be promoted on unsuspecting homeowners. Let me ask you this. So if there was no tagline that said certified, qualified, all the different things, and you just had ASHE willing to promote unqualified inspectors and you not willing to do it, would you still have a case? So the question is, if we had – if there was no tagline and they were willing to promote, would we still have a case? Well, if there was no tagline, we would not have a case because we wouldn't have false advertising. Okay. And I guess what I'm trying to get at is to explain to me how the tagline drew the newbie inspectors to ASHE. Sure. As opposed to how the promotion drew them to ASHE. I understand. And that is that the tagline offers them the opportunity to be promoted to the unsuspecting public as being educated, tested, verified, and certified when they might not be any of those four things. They might be two of those four things. They might not be one of those four things. So that is an opportunity that they're capturing if they send $450 to ASHE. They can't capture that opportunity if they join InterNACHI, if they send their 50 bucks a month to InterNACHI. Well, ASHE, they have three tiers of memberships, as I understand it. Yes. And there's a middle tier that was not certified. Would the middle tier, in your view, be educated, tested, certified? Again, I'd have to re-review what the qualifications were for the middle tier, but I believe the middle tier was educated to some extent, tested to some extent. They might not have been verified. The verification process was just submission of your name and information to a background testing organization, and the background testing organization gave information to ASHE about these candidates. What's really deceptive about it? It looks to me like kind of puffery at first. I mean, is a reasonable consumer really deceived in some way? Well, imagine if you wanted somebody to be certified at sound system engineering because this is being broadcast nationwide, and somebody told you they were certified in Cisco sound systems, and they weren't. Can't you just click to the inspector and find out what their level of experience and certification is? You could do more due diligence, absolutely. You could cross-examine the home inspector you're about to hire and find out whether or not how they hold themselves out to be is accurate. Couldn't the tagline be describing ASHE as an organization and not each individual inspector? Well, it's describing itself as a society, and I would say when you're describing your society as having certain characteristics, you're not talking about the seven employees at headquarters. You're talking about the membership as a whole. That's who you're describing with those characterization words. So each of those words you're contending is objectively verifiable as true or false? Well, they have a meaning, and they've run a spectrum in terms of how detailed they are, but verification, you're letting in people who are convicted of home invasion and burglaries and holding them out to the people who are consuming home inspection services as being verified. Somebody being promoted as educated, let's say it's a welder's union, and you would expect them to be educated in the welding arts. Somebody who is certified, I think that's black and white. You either know how to do Cisco sound engineering or you do not. You've been certified by Cisco or you have not. These are, I think, very clean concepts. I don't think they're all that fuzzy. Isn't the problem that all of these concepts, certification, qualification, verification, in any group is only as good as the company certifying them? Educated, so you brought up welding. Say you have someone who has a four-year degree in welding. That would certainly be educated. What if somebody took an online course for a couple of months? That could be educated, but there's a remarkable difference in the amount of education. And here we had zero education requirement, not a minute. You didn't even have to look at a book for five seconds. So that's the challenge, is that what does zero education requirement mean? I think education means something in this context. It's not zero. What do you say about the idea that the tagline was directed at consumers? And by consumers, I mean people who hire home inspectors and not people who want to register with an organization as a home inspector. Well, I would say the executive director of ASHI testified that one of the two primary benefits of joining ASHI is being held out on this website. And they brag about how they set up 140,000 home inspections through this tool. So it is attractive to a newbie. You're trying to get business in a crowded marketplace, and somebody offers you the opportunity to get exposure and to be held out as having certain characteristics that you don't have. I would say it's an attractive opportunity. It's also a problem for consumers. They were the ones who were deceived. The inspectors who joined, they knew that they didn't have these characteristics. I see my time has expired. Thank you, counsel. Let's hear next from Mr. Graberman. Good morning, Your Honors. May it please the Court, my name is Robert Graberman, and along with my colleague, Jeffrey Blue, we represent the appellee in this matter, American Society of Home Inspectors, or ASHI. The district court decision in this matter was correct and should be affirmed. As the district court correctly found, the appellant InterNACHI failed to develop any evidence whatsoever of causation and damage to it due to this supposedly false tagline. The standard that must be met in a false advertising case was articulated in Lexmark v. Static Control, and what Lexmark teaches is that a Lanham Act false advertising plaintiff must demonstrate an injury to a commercial interest in reputation or sales which flows directly from the deceptive advertising and that occurs when the deception of consumers causes them to withhold trade from the plaintiff. Counsel, do you agree with your adversary's position in describing this market as a duopoly? I do not. Okay, so what is your contention about that? So during the relevant time period, which was 2015, about March of 2015 through April of 2020, when we pulled this tagline down as part of an entire website redesign, there was one other national home inspector association. That inspector association ended up folding and the members came over to ASHI, but that was another competitor. In addition to ASHI and to InterNACHI, there are numerous state home inspector associations, including in large states such as California, Florida, and others. No different really than we have an American Bar Association. In my state we have an Illinois Bar Association, a Chicago Bar Association, et cetera. And so there is no requirement that any home inspector join one organization or the other and can join multiple. Let me just follow up on that. So as a factual matter, you disagree with the market definition. So what about the legal significance of that? If it's not a duopoly, I assume you would contend that more evidence needs to be provided on causation and injury. Absolutely. The evidence of causation and injury is set out in Lexmark and other cases, yes. And again, you know, this is not a case of where they're claiming that their reputation has been harmed. They're claiming that they essentially lost membership, new memberships or people dropped to join ASHI because of this tagline. The other thing I would add is, again, like the Bar Association, home inspectors can and do join multiple organizations. So an inspector who joins ASHI oftentimes joins InterNACHI. Is there record evidence of that? Yes. There's affidavit from our executive director in the record to that effect. And there's no challenge to that. All right. And so your opposing counsel says he does have evidence of injury and that his client submitted an affidavit. Yes. What would your position be on that? Well, his affidavit says that our tagline hurts consumers because it causes them to hire unqualified home inspectors who then end up killing people. I mean, that's his position here. In fact, he doesn't really take the position and never has in any of his public pronouncements that our tagline harms his company. He has this notion that somehow there are home inspectors out there killing children. Literally, that is what he has said. His affidavit says in conclusory fashion only that he believes the tagline has caused injury to InterNACHI. He's the only person ever to have said that anywhere. And he doesn't back that up with any facts. It's pure speculation and it's conclusory. And that is not sufficient in any affidavit, let alone an affidavit in support of a motion for summary judgment, where the issue is are there facts that would defeat the motion. Okay. Could your novice inspectors, I guess the associates, could they perform home inspections without any, you know, inspection education? It depends. Most states, I think at the time it was 34 and maybe more now out of 50, require licensure. So like an attorney, you can't go into a courtroom without a law license. And in your state... And the state licensing would be a state run test of some sort? Correct. It's a state run test. It's like a bar exam for home inspectors. You study for it and you take it and you have to pass it. And until you do, you cannot perform home inspections in that state. And there are some states that don't require licensure. And so, yes, theoretically, someone, I suppose, could go and say, I'm a home inspector, but without any training or background, I can't imagine them being hired. What is the evidence tying the tagline to the recruitment of newbie home inspectors? None. None. And would it be your position that the position, it seemed to me the position taken below was that it wasn't the tagline drawing the newbie home inspectors, it was the promotion, the willingness of your client to promote the newbie home inspectors? That's the allegation. And, again, it's supported by nothing other than speculation. All right. So assume it's true. Do you have problems then with your case? If it's true that... That it's the promotion, your willingness to promote the newbie home inspectors that drew them to you, is this still a live case? No, I don't think so. Even if they could prove that, which, of course, they haven't. It's just, again, rank speculation. Even if the tagline did draw those people, that's not evidence of harm to InterNACHI. In fact, in their brief, they reference one newbie. He was the son of a former president of ASHE who chose to join InterNACHI because InterNACHI had this robust program of services to newbie home inspectors. So they weren't losing newbies, clearly, to ASHE. They were welcome at InterNACHI, just as they would be at ASHE. It's a home inspector association. Okay, so giving you the idea that they could join either organization, or both. Yes. Was there evidence in the record showing that even though they might join both, that there were a group of newbie home inspectors that would not choose to do that, that they would choose to do one for financial or other reasons? No, no evidence whatsoever of that. The only evidence that they developed, they hired a survey expert. That survey expert sampled potential home buyers. He showed them the tagline and asked if they drew the impression from that that every inspector within the organization was educated, tested, verified, certified. They did not go on to ask the follow-up question, which is part of their causation element here, which is, well, would that be important in your decision to hire a home inspector? And even if it was, then they still had to prove, it's part of their allegation, that that would have driven more searches of InterNACHI as opposed to ASHE home inspectors, which would have then made it more desirable to join InterNACHI. They have this long causal chain, none of the links of which they have connected in this case. What explains the spike in membership then that benefited ASHE during this period? As I mentioned earlier, there was a home inspector organization that folded, and those members came over to ASHE. And that's where you see the spike. The evidence of this spike, by the way, comes from our experts' report. Nothing they developed. They looked at a little graph and they said, aha, right here there's a spike. Well, if you look at it, there's not. So where in the record is that, counsel? Where in the record is that evidence about the absorption of that other organization into ASHE? It's in an affidavit of our executive director, James Thomas. Counsel, how should this appeal be resolved if we don't think that the tagline is actionable? This court should then affirm the decision of the district court granting summary judgment in favor of ASHE. That doesn't create any sort of factual dispute. We're confused about what the words mean. It might be puffery. It might not be puffery. There's no further factual development that's required? That's just a legal question? Correct. It's just a legal question at this point. I'm going to turn it over to my colleague in a moment to talk about some of those matters. But the district court, he didn't address whether the tagline was puffery, whether it was false, whether these four words, standing alone without any context, are actionable, that sort of thing. The district court seized on the fact that they had not proven causation or any injury to them, and that's why the case was dismissed on summary judgment grounds. But, again, there are a host of other reasons why this court could affirm what the district court did. Yes, we were a counter-defendant. The underlying claims in the case against InterNACHI were disposed of on summary judgment. We did not appeal those. And then the counterclaim was disposed of on summary judgment as well, and that's why we're here, for just the false advertising Lanham Act claim. Thank you. Okay. Is Mr. Blue going to answer? Yes. Mr. Blue has three minutes. I'll turn it over to him, if I may. Thank you very much. Thank you. Thank you. Jeff Blue on behalf of the appellee. I wanted to touch real quickly on a question from Judge Carson. You asked if, and this is a materiality piece, because that is really one of the biggest issues here, is that there is no materiality. They haven't proven that the tagline had any impact on anybody. Their argument is that it was material in the sense that it created, that it encouraged home inspectors to join ASHE versus InterNACHI. And you had asked if the issues of promotion of the newbies versus the tagline was really what was driving the membership, would they have a case? And they wouldn't, because this is a false advertising case about the tagline. So to be very clear, if the underlying driver of getting membership into ASHE is the fact that they would promote newbies, not that the tagline was there, then there is no false advertising. What if the underlying issue is that they would falsely promote newbies as experienced? Where do we go from there? Well, first of all, there was no promotion of them as experienced. It was educated, tested, verified, or certified. So there wouldn't be. But there also was no evidence that these people were not experienced in the realm of home construction. Typically, a home inspector is somebody who was in the home construction business before they, and then they left the construction side and moved to the inspection side. So there's no evidence that any of the members of ASHE didn't have experience in the home construction world. They didn't develop any evidence to show that home inspector A had no experience performing A inspections, construction work, working as an electrician, working as a plumber. They didn't do anything along those lines to show who these people were and what kind of experience they had. And to follow up on the materiality, there was no evidence whatsoever that a home inspector ever looked at the tagline and thought about the fact that, oh, I should join ASHE because they have this tagline that says all these wonderful things about me. They could have gone out and surveyed home inspectors. They didn't go out and survey home inspectors. They couldn't, like Mr. Graveman said, they could have asked the home buyers whether the tagline actually influenced them, and they never did any of that either. They never created that causal link to show that the tagline had any material impact on decisions of either, of home inspectors to join ASHE, which is really what their claim is, or where they seem to take it at times, whether it drove a home buyer to hire an ASHE home inspector. All right, counsel, thank you. Your time has expired. Thank you, sir. We appreciate the arguments this morning, and counsel will be excused and the case submitted.